No. 13356

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

J & S HOME REALTY, INC., a
Montana Corporation,

            Plaintiff and Appellant,

    -vs-

THE ANACONDA COMPANY, A Montana
Corporation,

            Defendant and Respondent.

---

Appeal from:   District Court of the Fourth Judicial District,
               Honorable Edward T. Dussault, Judge presiding.

Counsel of Record:

    For Appellant:

        Boone, Karlberg and Haddon, Missoula, Montana
        Wm. T. Boone argued and Sam E. Haddon argued,
         Missoula, Montana

    For Respondent:

        Garlington, Lohn and Robinson, Missoula, Montana
        Robert E. Sheridan, Jr. argued, Missoula, Montana

---

                        Submitted:   March 2, 1977

                        Decided: APR 27 1977

Filed: APR 27 1977

_Thomas J. Kearney_
                    Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Plaintiff appeals from a judgment entered by the district court, Missoula County, sitting without a jury, in a breach of contract action. Liability and damages were separated for trial.

In March 1971, J & S Home Realty, Inc. (J & S) entered into a contract with The Anaconda Company (Anaconda) to act as the distributor of prefabricated homes manufactured by Anaconda Forest Products, a division of the Anaconda Company. By the terms of this contract J & S was to be the sole distributor of these homes in Montana. For this privilege J & S was to pay a franchise fee and receive a specified percentage commission on each sale.

In May 1972 Anaconda sent a notice which conformed to the procedure set out in the contract termination provision informing J & S that Anaconda was terminating the franchise. On June 26, 1972, following six months of negotiations, Anaconda sold the assets of its division, Anaconda Forest Products, including the prefabricated home building plant to Champion International Corporation for its U.S. Plywood Division.

It is conceded the termination was an adjunct to the sale of these assets. All parties agree (1) Anaconda Forest Products was a profitable division of Anaconda and that these assets were sold for a sound business reason to improve Anaconda's cash position, (2) that at the time Anaconda entered into the franchise agreement with J & S the sale of those assets was not contemplated, and (3) that the termination provision in the franchise contract was a subject of bargaining.

The original draft of the provision allowed termination "with or without cause" while the final provision reads in pertinent part:

> "Either party may cancel or terminate this agreement with cause, including any breach of the provisions of this agreement * * *."

Berton N. Schultz, Jr. of J & S, testified that during negotiations with Anaconda the reason for the change of language was:

> "A. Well, it was going to be our responsibility to set up other distributors and to hire people. And at that time we felt that we were not willing to enter into a contract with Anaconda if such a contract could be canceled in 30 days by either party at their own will."

As a result of entering into the contract, J & S hired additional people and made changes in their company which entailed substantial dollar investments.

This case is not one where the distributor of the product had all the bargaining power and the provisions of the contract favor the distributor. Here, the language of the contract on its face excludes termination at the subjective will of the parties. The phrase "cause, including any breach of the provisions of this agreement" indicates that "cause" was meant to be broader than legal cause alone. Care should be taken that there is no confusion on this matter -- Anaconda always had the power to terminate the contract but it would, of course, have to pay damages. Here, the question is whether there was "cause" for termination which would allow the ending of the relationship pursuant to the contract provision and thus not have to pay damages.

The sole issue presented for this Court's review is whether Anaconda's going out of the building materials business, in good faith for business reasons, is "cause" as the term was used in the contract?

The question is difficult and arises in a number of contexts, but the controlling issue is what the parties meant at the time of entering the contract by the words "with cause". Applying Montana's rules of construction, the parties certainly did not mean the contract could be terminated at will to the advantage of the corporation. Anaconda sold the assets rather than the corporation and conveniently disposed of the rights of J & S.

Anaconda's prior franchises were terminable "with or without cause" but in the instant case the parties bargained to a different agreement. To hold otherwise is to allow termination at will, requiring only a good faith subjective reason for termination, and termination at will was excluded by the contract language.

Here, it is clear that termination was not for some failure on the part of J & S. In fact the termination notice states:

> "We certainly have enjoyed our relationship with
> you and your organization and are very sorry that
> this relationship has to be terminated."

The only cause alleged by Anaconda as the basis for termination was that the sale of the assets made performance impossible. However, the sale of assets took place after the termination. The termination was an adjunct to the sale and not because sale had made performance impossible.

While it is undisputed that Anaconda had a sound good faith reason to sell its forest products assets, there was no condition forcing termination, the division was still profitable and able to get materials. If Anaconda could no longer get the materials it needed from its timber lands because of government regulation, or if a long term downturn in the economy destroyed the profit of the building materials division, then there might exist conditions forcing termination emanating from outside Anaconda's control

which would constitute "cause". In Parsil v. Emery, 272 N.Y.S. 439, 440; an argument similar to Anaconda's was rejected:

> "* * * The claim of defendant that he is excused from performance under the contract 'because performance has been made impossible by destruction of the subject matter thereof' is predicated upon the allegation that the employer was dissolved as a corporation. The answer to this, in our opinion, is that this dissolution was nothing more than a voluntary sale of the corporate assets to another corporation engaged in like business. The case might be otherwise had the dissolution been effected by the Attorney General; in other words, an involuntary dissolution * * *."

Several cases cited by J & S are of import here. In Buono Sales Inc. v. Chrysler Motors Corporation, 363 F.2d 43,44,49, a distributor who had a contract to sell DeSoto and Plymouth automobiles was terminated by the corporation's decision to discontinue the DeSoto. The court noted that from the contract itself the very thought that Chrysler might sometime abandon the DeSoto was not within its contemplation at the time the contract was entered into with its dealers; that had the corporation contemplated such action it could easily have so provided in the contract. Further that in all such dealings of the corporation with dealer franchises the corporation is the dominating party. The court noted:

> "* * * Deceiving its dealers from the beginning as to what would have been an all important element of the agreement, hardly fits that situation or indeed into the basic picture of an outstanding American industry. As appears from the record this matter arises wholly from a radical corporate determination, for whatever the reason, to cut its production losses on DeSoto immediately. The inevitable collateral consequences of that move, the damage claims of its dealers, etc., if then bothered about at all, undoubtedly were regarded as the lesser evil which could be handled later.
>
> "* * *
>
> "The contract before us is clear. Its unmistakable intent is to protect Chrysler as to its dealers in every foreseen contingency. It does not by its terms or impliedly give Chrysler the naked right to discontinue without contract

cause, manufacturing and distributing to its dealers DeSoto automobiles. In so doing Chrysler broke the contract."

We find the reasoning found in Buono Sales Inc. applicable to the instant case.

In two New York cases cited by J & S, Noah v. Daitch & Co., 192 N.Y.S.2d 380 and Cycleway, Inc. v. Kawasaki Motors Corp. 354 N.Y.S.2d 812, the courts upheld as reasonable termination clauses where the number of days notice of termination was stated and agreed upon by the parties to the contract.

Here we have the sale of the assets which is not cause in the sense of an outside condition forcing termination, unless one accepts the subjective reason that the sale would be more profitable if the contract could be terminated at no cost to Anaconda.

We find the district court erred in its conclusion of law No. 3, which states:

> "That the sale of Defendant's forest products division, including the mill, timberlands, house plant and related assets and equipment and the resultant cessation of all operations relating thereto, was sufficient cause for the termination of its franchise agreement with the Plaintiff."

The decision of the district court is reversed and the cause remanded for a hearing on damages.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.