Henry Clay Greenberg, J.
Defendants move under subdivision 4 of rule 106 of the Buies of Civil Practice to dismiss the complaint for insufficiency.
Plaintiffs, owners of a retail dairy and grocery store, selling Daitch dairy products with the right to use and display the Daitch trade-mark as a “ Daitch Dairy ’ ’ agency store, bring this action for a permanent injunction restraining defendant L, Daitch & Co. Inc. (herein “Daitch”) from terminating its agreement with plaintiffs and defendant Daitch-Shopwell Central Westchester, Inc. (herein “Shopwell”) from interfering with the continuance of plaintiffs’ business as an agency store and from establishing a similar business within a radius of five blocks from plaintiffs’ store.
Although the complaint sets forth three causes of action, the second and third merely repeat in slightly modified form the allegations of the first cause. The gravamen of the complaint as a whole is that defendant Shopwell, entering into an arrangement with defendant Daitch to open a dairy store within two blocks of plaintiffs’ store, wrongfully and intentionally induced Daitch to repudiate and terminate its agreement with plaintiffs “ for the purpose of injuring plaintiffs’ business, as herein-before alleged, and thereby advancing the interests of each of said defendants ”, permitting the defendants thereby “ to appropriate to themselves the good-will, income and business success which plaintiffs, through their own efforts, had built up for a period of approximately seven years ”.
Plaintiffs allege that they bought and took over the operation of their present store on October 6, 1952 in reliance upon the representations of defendant Daitch that it wished to introduce Daitch products in that neighborhood and would assist them in the development of a successful dairy and grocery store at said location and upon Daitch’s agreement to sell its products to plaintiffs exclusively within a radius of five blocks of said store.
Plaintiffs then set forth in the form of allegations the terms of the agreement entered into on October 6, 1952. That Daitch agreed to sell to plaintiffs all the goods handled by it which plaintiffs would require at the same prices as “ Daitch Dairy ” agency stores, granting plaintiffs the right to use the Daitch *651 trade-mark. That plaintiffs obligated themselves to purchase their entire requirement of merchandise from Daitch and to obtain Daitch’s consent in writing before purchasing any other goods from others; to devote all their time to the conduct of said business; to provide sufficient and competent employees; to follow Daitch’s directions as to the method of procedure in such matters as packing, handling, buying and selling of all merchandise; to keep the store in good order and repair; and to comply with all statutes, ordinances, rules and regulations.
It is evident from the form of the wording of the allegations of representations, referred to as the “ understanding between plaintiffs and the defendant Daitch ’ ’, and the later allegations setting forth the “ terms of said agreement” that there was a written agreement entered into on October 6, 1952 which did not contain any of the alleged prior representations or understanding of the parties. This deduction is proven to be true by plaintiffs’ own papers on their companion motion for a temporary injunction returnable the same day as this motion. Without the slightest word of explanation as to their failure to attach a copy of the written agreement to the complaint, they do attach a copy thereof to their motion papers.
The substance of the terms of said agreement is correctly set forth in the complaint, so far as it goes. As noted, there is no reference in the agreement whatsoever to a five-block area or any exclusive area reserved for plaintiffs. And there is a very pertinent provision concerning termination of said agreement which plaintiffs have completely omitted from their recital of its terms: that Daitch ‘1 shall have the right to terminate the agreement at any time after the expiration of one year from the date hereof, upon notice of not less than thirty (30) days in person or by registered mail addressed to the Buyer ’ ’. Daitch did in fact, as alleged in the complaint, notify plaintiffs on July 24, 1959 “that it elected to terminate its agreement with plaintiffs and that on and after September 5,1959 it would no longer sell to plaintiffs its products and that plaintiffs would no longer be entitled to use the name and trademark of defendant Daitch ’ ’.
There is, of course, no question as to the existence of the above termination clause in the agreement of October 6, 1952. Obviously, it should have been set forth in the complaint among the terms of the agreement. Its existence may be said to be impliedly acknowledged in the complaint and it will be assumed that plaintiffs omitted it from the recital of the terms of the •agreement through inadvertence. Indeed, plaintiffs’ brief on this motion discusses the legal effect of this termination clause *652 with relation to the sufficiency of the complaint on the assumption that it is a part of the agreement of the parties set forth in the complaint.
Whether we consider the complaint in its present, incomplete form or as it properly should have been drawn and as the parties have assumed in their briefs, with an attached copy of the agreement containing said termination clause, it fails to state a cause of action.
The alleged understanding that plaintiffs were granted exclusive rights within a five-block area is not stated to be for any definite period of time. As alleged in the complaint, the entire agreement is of indefinite duration. If we assume, as the complaint now strictly reads, that there was no termination clause in the agreement, the rule to be applied would be that where there is no provision in a distributorship or supplier-agency contract as to termination, the supplier is nevertheless allowed to terminate but only after giving reasonable notice (A. S. Rampell Inc. v. Hyster Co., 3 N Y 2d 369, 381). Here the complaint alleges that 43 days’ notice of termination was given, which may be deemed prima facie to be reasonable notice, and there is no allegation that such notice was not reasonable in the light of the nature of the business affected and the relationship of the parties. In fact, plaintiffs’ theory, as clearly appears from their complaint, is that defendant Daitch did not have the right to terminate at any time except for cause and that plaintiffs had been granted exclusive rights for an unlimited time. Thus, as the complaint presently reads, it fails to state a cause of action against defendant Daitch.
And, if we assume, as the parties do, and the facts compel, the existence of the termination clause which is a part of the parties’ agreement, the rule to be applied is that where the parties have agreed to a termination clause, it must be enforced as written (A. S. Rampell, Inc. v. Hyster Co., supra, p. 381). Thus, the cause of action insofar as it rests upon an alleged breach of the agreement by defendant Daitch is insufficient.
The alleged oral representations upon which plaintiffs rely cannot be the basis of recovery. The alleged understanding as to exclusive territory rights claimed to have induced plaintiffs to execute the agreement would have to be excluded under the parol evidence rule. Clearly, it is a provision so connected with the transaction that the parties would be expected to embody it in their written agreement. But, even assuming the enforcibility of the alleged exclusive territory understanding, *653 Daitch’s right to terminate the entire relationship always existed under the above-mentioned rules of law.
The defendant Shoppe!! is charged with the tort known as ‘ ‘ inducing breach of contract ’ ’. It is important to distinguish between existing contracts having a definite date of duration and at-will business relationships. In the former case, intentional interference by a third party, inducing its breach, is actionable even in the absence of malice and even where the motive is the self-interest of the third party (Benton v. Kennedy-Van Saun Mfg. & Eng. Corp., 2 A D 2d 27). In the latter situation, however, there is no liability for inducing a termination of the relationship for the purpose of advancing the economic self-interest of the third party; mere inducement to discontinue such relationship is not actionable “ unless the purpose of the actor Avas solely to produce damage, or unless the means employed Avere dishonest or unfair”. (Coleman & Morris v. Pisciotta, 279 App. Div. 656.) If disturbance or injury to one’s business relationships comes as the result of competition and without improper means, there is no cause of action, unless some superior right by contract is interfered Avith. Absent a definite and existing contract, if a third party has a legitimate interest to protect — and in our system of free enterprise, the privilege of competition is accepted as a legitimate interest — even the addition thereto of a spite motive is insufficient to ground liability (Prosser, Torts [2d ed.], pp. 749-750). The only remedy against the possibility of competitive inducement to terminate an at-Avill relationship is to provide for a contract of extended and definite duration.
This complaint alleges that defendant Shopwell’s inducement to defendant Daitch to terminate the agreement with plaintiffs Avas for the purpose of “ advancing the interests of each of said defendants ” so that they could “ appropriate to themselves the good-will, income and business success ” of plaintiffs. These allegations fall within the purview of the privilege of competion. Despite the sprinkling of such conclusory language as “malice”, “conspiracy” and “design”, the complaint does not charge that defendant ShopAvell’s sole purpose was to injure plaintiffs, nor does it set forth any improper or dishonest act on its part. Accordingly, it fails to state a cause of action against defendant Shopwell.
Moreover, the complaint implies that defendants are united in interest and actually, as plaintiffs themselves state in their affidavits on the motion for an injunction, the two defendants are “inter-related corporations”. No liability could under such circumstances of identity of interest be imposed upon *654 defendant Shopwell for inducing even a breach of contract by its allied corporation so long as it acted within the scope of its authority and did not commit any separate and independent tort. This conclusion is derived by analogy from the tine of cases holding that an officer of a corporation, acting on its behalf and within the scope of his authority, is immune from personal liability for inducing his corporation to break a contract, unless his act involves individual and separate tortious acts (Greyhound Corp. v. Commercial Cas. Ins. Co., 259 App. Div. 317; Buckley v. 112 Central Park South, 285 App. Div. 331).
Defendants’ motion to dismiss the complaint is accordingly granted. Settle order.