558 P.2d 741

**Leon ULAN and Sylvia Ulan, husband and wife, Appellants,**

**v.**

**VEND–A–COIN, INC., an Arizona Corporation, Appellee.**

**No. 2 CA–CIV 2119.**

Court of Appeals of Arizona, Division 2.

Nov. 3, 1976.

Rehearing Denied Nov. 30, 1976.

Petition for Review Denied Jan. 4, 1977.

Law Offices of William L. Berlat, P.C. by William L. Berlat, Tucson, for appellants.

Feldman, Wolin & Lahr, P.C. by Marvin Wolin, Tucson, for appellee.

## OPINION

KRUCKER, Judge.

Vend-A-Coin, Inc. is an Arizona corporation which operates laundry machines in various locations throughout Tucson, Arizona. The machines are operated under a writing which is styled "Location Agreement." On October 30, 1969, Vend-A-Coin, appellee herein, obtained a "Location Agreement" from A. P. Brown and Company, the property manager of Spencer Joy Apartments.

The agreement in question contains eight clauses and provides, inter alia, that the operator will install coin-operated laundry equipment and will pay to the owner of the premises a sum equal to 35 percent of each prior month's gross receipts. The agreement was to last for 15 years and during that period the owner agreed not to maintain or cause to be installed any other laundry equipment on the premises.

The agreement further provided that all "rough-in" installations necessary to the operation of the laundry equipment were to be provided at the owner's expense. Clause

No. 8 of the writing contained the provision that the agreement ". . . shall be binding upon the heirs, successors or assigns of the respective parties hereto." The agreement was signed by the property manager of A. P. Brown and Company and witnessed by the resident manager. It was recorded in April, 1972.

Thereafter, Vend-A-Coin installed two washers and one dryer, despite the terms of the written agreement, and incurred "rough-in" expenses of approximately $700 to $800.00. The expenses arose from the installation of a hot water heater and certain electrical and plumbing connections.[1] Apparently, for the next 3½ to 4 years the appellee operated the machines without problem. The record reflects that "sometime in 1973" Denton Realty Company bought the apartment complex.

Appellant, Leon Ulan, was also in the laundry machine location business and was in close competition with Vend-A-Coin. An agent, working for Ulan, approached Denton Realty in the hope of soliciting new business locations. As a result of this solicitation, Denton informed appellants that they could have the laundry operation at three apartments which they owned, including Spencer Joy. With Denton's authorization, Ulan replaced appellee's machines with his own, severely damaging the former during the course of the replacement.

Appellee filed suit against Denton Realty and appellants alleging breach of contract and interference with an existing contract. After a trial by jury, a verdict was returned against appellants in the amount of $500 actual damages and $7,000 punitive damages. This appeal followed.

Appellants have presented four issues for our review. We need not, however, consider them all in order to properly dispose of this case.

The initial question to be resolved is whether the writing before us is a valid license agreement or is rather in the nature of a lease. Although there are some cases to the contrary, the majority of reported decisions have held that contracts of the type under consideration are licenses. *American Coin-Meter of Colorado Sp., Inc. v. Poole*, 31 Colo.App. 316, 503 P.2d 626 (1972); *Halpern v. Silver*, 187 Misc. 1023, 65 N.Y.S.2d 336 (N.Y.City Ct. 1946); *Muller v. Concourse Investors, Inc.*, 201 Misc. 340, 111 N.Y.S.2d 678 (1952). We are of the opinion that the majority view is correct. A license is merely a permit or privilege to do what otherwise would be unlawful. *Radke v. Union Pacific Railroad Company*, 138 Colo. 189, 334 P.2d 1077 (1959). A lease, however, gives the right of possession of the properly leased and exclusive use or occupation of it for all purposes not prohibited by its terms. *American Coin-Meter of Colorado Sp., Inc. v. Poole*, supra.

In the case at bar, Vend-A-Coin received no right of possession to the premises by virtue of the agreement. Rather, it had the mere right to enter the premises for certain limited purposes set forth in the agreement. At no time did appellee acquire an interest in the laundry space. On the contrary, its interest was confined to the machines and their ordinary maintenance.

Working from the premise that the location agreement is indeed a license, the next question to be resolved is whether the license agreement was irrevocable and thus binding on Denton Realty Company. It is appellee's position that the terms of the contract bound the original licensor while Denton, as subsequent purchaser, was bound by virtue of the irrevocability of the license. In support of this position, appellee asserts that the license was either coupled with an interest or was executed. Again, we cannot agree.

1. We note that the evidence is in conflict on this point. Michael Briefer, a disinterested witness, testified that he had installed and operated washing machines and dryers in Spencer Joy Apartments from 1966 to June or July, 1968. To the best of his recollection, plumbing facilities and a hot water heater were available at Spencer Joy at that time and were not removed upon his departure. Ulan further testified that machines had been at the location before the Vend-A-Coin agreement.

We first note that our research has failed to uncover a single Arizona decision which has recognized the license coupled with an interest doctrine. In any event, this exception to the general rule of the revocability of a license is applicable only where the licensee has an interest in the property itself (e. g., an interest in crops, timber or minerals on the property). *Anchor Stone and Materials Company v. Carlin*, 436 P.2d 650 (Okl.1967). It has been said that in such a case the authority conferred is not merely a permission but amounts to a grant or easement.

The whole thrust of appellee's opening argument to this court as to the nature of the location agreement was that it was merely the granting of a privilege which did not amount to an interest in the real property. Now, appellee apparently desires to enjoy the best of both worlds by taking the exact opposite position. It is our opinion that no sufficient interest in the land exists for appellee to invoke the exception.

In the alternative, appellee states that the location agreement was an executed license in that a sum of money had been expended in installing the machines. We do not believe that the executed license doctrine is apposite. First, the exception generally applies to parol rather than written licenses. *See, Murduck v. City of Blackwell*, 198 Okl. 171, 176 P.2d 1002 (1946); 25 Am.Jur.2d Easements and Licenses § 130 (1966). In the case at bench, we are dealing with an express written agreement which calls for the owner of the premises to bear installation costs. Secondly, the doctrine contemplates that any expense incurred must be for substantial improvements of a permanent rather than temporary nature. *See, Anchor Stone and Materials Company v. Carlin*, supra.

The principal Arizona decision recognizing the executed license exception is in harmony with our interpretation of the doctrine. In *Keystone Copper Mining Co. v. Miller*, 63 Ariz. 544, 164 P.2d 603 (1945), our Supreme Court, after citing the general language from 33 Am.Jur. 400 Sec. 92; 408 Sec. 103, Licenses, stated:

"An executed license, *as where the licensee expends money in constructing buildings* and uses the ground with the assent, knowledge and acquiescence of the owner, creates or results in an equitable right capable of being assigned and which may not be disregarded or revoked by the owner of the premises." (Emphasis added)

In our opinion the executed license exception should not be expanded to encompass the fact situation at bench. To hold otherwise could lead to unfortunate and unjust results. A supplier, simply by making a relatively small expenditure for a permanent improvement (e. g., a pipe), could claim the existence of an executed license. Every subsequent owner of the building or premises, within the term of the agreement, would be bound to deal with the original supplier. We do not believe that the *Keystone* court desired the executed license exception to encompass such situations.

The general rule is that a license, not falling within a specific exception, is revoked *ipso facto* by the licensor's conveyance of the land, or by his doing any act inconsistent with the exercise of the license. *American Coin-Meter of Colorado Sp., Inc. v. Poole*, supra; *Apollo Stereo Music Company, Inc. v. Kling*, 528 P.2d 976 (Colo.App. 1974); 25 Am.Jur.2d Easements and Licenses Sec. 131 (1966). However, even assuming arguendo, that the license was revoked by the transfer of the property to Denton, it would still appear that a business relationship existed between Denton and Vend-A-Coin after the sale. For at least several months the machines were operated as usual and Denton received payments under the terms and arrangements of the original location agreement. Although the retention of such commissions has been held not to constitute a waiver of the right to terminate, *American Coin-Meter of Colorado Sp., Inc. v. Poole*, supra, it is evidence of the fact that certain expectancies existed between the parties. The sole remaining

question thus becomes whether the conduct of Ulan amounted to an interference with this existing business expectancy.

■ The traditional elements of the tort of inducing breach of contract are: (1) an existing contract between the plaintiff and a third party; (2) defendant's knowledge of this contract; (3) an intentional unjustified inducement to breach the contract; (4) a subsequent breach by the third party; and (5) resulting damage to plaintiff. *Hannigan v. Sears, Roebuck and Co.*, 410 F.2d 285 (7th Cir. 1969); *see, Tipton v. Burson*, 73 Ariz. 144, 238 P.2d 1098 (1951). The tort has been expanded in Arizona to cover not only interference with valid contractual relations but also with business expectancies. *Pre-Fit Door, Inc. v. Dor-Ways, Inc.*, 13 Ariz.App. 438, 477 P.2d 557 (1970).

Despite the broad language in *Pre-Fit Door* it is obvious that not all business inducements are tortious in nature. Certain exceptions and privileges have evolved which prevent incursion into our system of free enterprise. The Restatement of Torts Sec. 768 (1939) provides:

"(1) One is privileged purposely to cause a third person not to enter into or continue a business relation with a competitor of the actor if

(a) the relation concerns a matter involved in the competition between the actor and the competitor, and

(b) the actor does not employ improper means, and

(c) the actor does not intend thereby to create or continue an illegal restraint of competition, and

(d) the actor's purpose is at least in part to advance his interest in his competition with the other.

(2) The fact that one is a competitor of another for the business of a third person does not create a privilege to cause the third person to commit a breach of contract with the other even under the conditions stated in Subsection (1)."

■ Thus it may be gleaned that the privilege to engage in business and to compete with others implies the additional privilege to induce third persons to do their business with the actor rather than with his competitors. Restatement of Torts Sec. 768 (Comment on Subs. (1)(b) (1939)). Further, it is evident that a distinction exists between inducements involving contracts of a definite period of duration and at-will business relationships. This distinction was discussed in *Noah v. L. Daitch & Co.*, 22 Misc.2d 649, 192 N.Y.S.2d 380 (1959), where the court stated:

"In the former case, intentional interference by a third party, inducing its breach, is actionable even in the absence of malice and even where the motive is the self-interest of the third party (*Benton v. Kennedy-Van Saun Mfg. & Engineering Corporation*, 2 A.D.2d 27, 152 N.Y.S.2d 955). In the latter situation, however, there is no liability for inducing a termination of the relationship for the purpose of advancing the economic self-interest of the third party; mere inducement to discontinue such relationship is not actionable 'unless the purpose of the actor was solely to produce damage, or unless the means employed were dishonest or unfair'. *Coleman & Morris v. Pisciotta*, 279 App.Div. 656, 107 N.Y.S.2d 715, 716. If disturbance or injury to one's business relationships comes as the result of competition and without improper means, there is no cause of action, unless some superior right by contract is interfered with. Absent a definite and existing contract, if a third party has a legitimate interest to protect—and in our system of free enterprise, the privilege of competition is accepted as a legitimate interest—even the addition thereto of a spite motive is insufficient to ground liability (Prosser on Torts—2d Ed.—pp. 749–750). The only remedy against the possibility of competitive inducement to terminate an at-will relationship is to provide for a contract of extended and definite duration." 192 N.Y.S.2d at 386.

■ In the case sub judice, even assuming that Ulan had initiated negotiations

with Denton [2] concerning a new agreement, such conduct clearly falls within the purview of the privilege of competition. Ulan and Vend-A-Coin were business competitors. Denton maintained an at-will business relationship with Vend-A-Coin. No evidence exists that improper means had been employed by Elaine Richardson, Ulan's agent, in securing the new contract, nor does it appear that there had been an illegal restraint of trade. In short, the actions taken by Ulan appeared to have been directed toward the advancement of personal economic interests.

Appellee has called our attention to the following statement made by Ulan to McKendrick:

> "I told McKendrick that if he was not getting his service from Vend-A-Coin that he was not obligated under the contract as there had been a breach by Vend-A-Coin and that the contract was not binding."

However, an examination of the record reveals that this statement was made after the contracts between Ulan and Denton had been consummated. The comment did not serve as a source of inducement to breach, but rather was a post facto justification for an action which Denton was legally entitled to perform. As such, it was also immaterial to the question at bench.

Free enterprise is a cornerstone of our democratic society. As such, needless or undue infringement upon competition must not be condoned by our courts. We are unable to conclude in the instant matter that a tort has been committed.[3]

**2.** In fact, the record reveals that Ms. Richardson's business objective had been the Jefferson Apartment complex and that Spencer Joy had been "thrown in" as part of a group agreement. She further testified that the subject of putting machines in Spencer Joy *was initiated by a representative of Denton Realty* (our emphasis). This evidence is corroborated by both Ulan's own testimony that he had never told the agent to secure a particular apartment location and the testimony of James McKendrick, the former head of the property management department for Denton, who stated that only inquiries concerning the Jefferson apartments had been made.

Reversed with directions that judgment be entered in favor of appellants.

HOWARD, C. J., and HATHAWAY, J., concur.

**3.** Punitive damages are based on aggravated, wanton, reckless, maliciously intentional wrongdoing, or where there is spite or ill will. *Acheson v. Shafter*, 107 Ariz. 576, 490 P.2d 832 (1971); *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 521 P.2d 1119 (1974). Although it is obvious that animosity existed between the parties before us, we do not believe that the actions of appellants amounted to reckless indifference to the interests of appellee and conclude that exemplary damages were improperly awarded.