**ALCO STANDARD CORPORATION
d/b/a Ebeling & Reuss
Company, Plaintiff,**

v.

**SCHMID BROTHERS, INC., W. Goebel-Porzellanfabrik KG, the House of Goebell/GMBH Gift Sales, House of Global Art, Goebel-Art GMBH, Hummelwerk, Goebel Promotion, Wilhelm Goebel, Frieda Goebel, Eugene Stocke, Ruth Stocke, and Ulrich Stocke, Defendants.**

No. 85 CIV. 1175 (PKL).

United States District Court,
S.D. New York.

Jan. 27, 1986.

Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa. (David L. Grove, of counsel), Harvis & Zeichner, New York City (Stephen F. Ellman, of counsel), for plaintiff.

Davis Polk & Wardwell, New York City (Bartlett H. McGuire, Paul R. Koepff, George B. Newhouse, Jr., of counsel), for Goebel defendants.

Henry Herrmann, Boston, Mass., Wormser, Keily, Alessandroni, Hyde & McCann, New York City (Lawrence M. McKenna, of counsel), for defendant Schmid Bros., Inc.

LEISURE, District Judge:

This matter is before the Court on defendants' motions, pursuant to Fed.R. Civ.P. 12(b)(6), to dismiss portions of the complaint for failure to state a claim upon which relief can be granted. The complaint alleges federal antitrust and state law tort and breach of contract claims in connection with the termination of a distributorship agreement between plaintiff and W. Goebel Porzellanfabrik KG ("WGP") for the distribution of the "Hummel" line of porcelain figurines and other collectibles manufactured by WGP. Plaintiff claims, *inter alia*, that: (a) WGP; (b) WGP's current authorized United States distributors, House of Goebel (and its United States sales division, House of Global Art) and Goebel-Art (and two of its United States divisions, Hummelwerk and Goebel Promotion); (c) several German individual defendants (collectively, the "Individual Defendants"); and (d) Schmid Brothers, Inc. ("Schmid"), have conspired to eliminate competition in the importation and distribution of Hummel products in the United States. The Individual Defendants are alleged to be partners in WGP. For the purposes of this opinion, all defendants, except for Schmid, are sometimes collectively referred to as the "Goebel Defendants."

The complaint alleges that, since 1935, WGP has reproduced and sold certain art works of Sister Berta Hummel of the Congregation of the School Sisterhood of the Third Order of St. Francis of Siessen in Wurttemberg, Germany. Since 1935, plaintiff has promoted, imported and distributed at wholesale Goebel-Hummel products throughout the United States.

Since 1968, Schmid and WGP have been engaged in litigation in which Schmid asserted that it had certain copyrights along with WGP to reproduce and sell reproductions of the Hummel art works. Plaintiff alleges that Schmid's primary purpose in undertaking this litigation was to secure the right to import and distribute Goebel-Hummel products in the United States at plaintiff's expense, to reduce competition in the relevant markets and to appropriate plaintiff's business and goodwill. The complaint alleges that, since 1971, Schmid has sold in the United States reproductions of certain art work of Sister Hummel. In 1984, the Hon. Eugene H. Nickerson, United States District Judge for the Eastern District of New York, found that Schmid was the joint owner with WGP of copyright renewals in five Goebel-Hummel products. *Schmid Brothers, Inc. v. Goebel Porzellanfabrik KG.*, 589 F.Supp. 497, 505 (E.D. N.Y.1984).

Thereafter, Schmid and WGP sought to settle all outstanding legal disputes between them. As a condition of entering into settlement talks, plaintiff alleges that Schmid demanded that WGP terminate plaintiff as an authorized distributor of Goebel-Hummel products. Plaintiff alleges that the Goebel Defendants thereby agreed to terminate the distributorship agreement with plaintiff. Plaintiff further alleges that the Goebel Defendants and Schmid agreed that Schmid would become a primary distributor and importer of Goebel-Hummel products in the United States. In furtherance of this agreement, on August 23, 1984, WPG served notice to terminate the January 1, 1978 distributorship agreement entered into among plaintiff and WGP, Goebel Art, Hummelwerk, Goebel Promotion, House of Goebel and House of Global Art.

Plaintiff has conceded that Individual Defendants Frieda Goebel, who died in 1958, and Eugen Stocke and Rut Stocke [1] should be dismissed from the action. The motions to dismiss the action as against them therefore are granted.

---

**1.** The original caption filed in this case has incorrectly spelled the first names of the Stockes. The Court has spelled the names as they appear in the affidavit of Gernot Lohfink, submitted by the Goebel Defendants in support of the within motion.

The Goebel Defendants, except for WGP, have moved to dismiss Counts I, II and III of the complaint on the grounds that the facts alleged are addressed "for the most part" to the actions of WGP and Schmid only. Defendants claim that plaintiff has pleaded no facts which indicate that any defendant, besides WGP and Schmid, participated in the decision to terminate. The Goebel Defendants contend that allegations recited above are conclusory and lack any specific factual foundation.

■ "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). It is not necessary to plead either the evidence or the facts upon which antitrust conspiracy claims are based in order for a complaint to withstand a motion to dismiss pursuant to Rule 12(b)(6). *Eye Encounter, Inc. v. Contour Art, Ltd.*, 81 F.R.D. 683, 686 (E.D.N.Y.1979). Plaintiff has identified the co-conspirators and described the nature and effect of the alleged conspiracy. This is sufficient to state a claim. *General Electric Co. v. Bucyrus-Erie Co.*, 563 F.Supp. 970, 975 (S.D.N.Y.1983). While it is true that corporate affiliates and subsidiaries are "incapable of conspiring with each other for purposes of § 1 of the Sherman Act," *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 2745, 81 L.Ed.2d 628 (1984), the complaint in this case alleges a conspiracy between the Goebel Defendants, subsidiaries and affiliates of each other, with Schmid, a separate unrelated competitor.

Although the Goebel Defendants have presented the Court with extensive citations to legal authorities that address the factual merits of plaintiff's antitrust claims, these arguments go beyond the matters that are presently before the Court on this Rule 12(b)(6) motion. "A perceived unlikelihood that [plaintiff] can actually prove the allegations of the [complaint] is no basis for dismissing [it] under Rule 12(b)(6)." *Christen Inc. v. BNS Industries, Inc.*, 517 F.Supp. 521, 523 (S.D.N.Y. 1981). The motions to dismiss Counts I, II and III as against any of the remaining Goebel Defendants are denied.[2]

■ Next, the Goebel Defendants seek to dismiss Count VI of the complaint, which alleges breach of representations by them to plaintiff that WGP held "solely for its own benefit United States copyrights on all Hummel Products which it made for sale in the United States...." Complaint ¶ 68. This count apparently is based upon Judge Nickerson's ruling that Schmid and WGP shared copyrights in certain Hummel artworks. Defendants claim that this count fails to state a claim upon which relief can be granted because the 1978 distributorship agreement contains no such representation of copyright ownership. Earlier distributorship agreements between plaintiff and WGP did contain such representations. Plaintiff takes the position that, although the agreement does not expressly contain such a representation, it did require plaintiff to cooperate in the suppression of the sale of spurious Goebel-Hummel products and to contribute funds to Goebel Promotion for use by WGP and Goebel Promotion to protect the Hummel products. Without citation to any legal authorities, plaintiff argues that these obligations carry with them the continuing representation that WGP held protectible copyrights. Even if it were assumed that this was true, Count VI does not make out a misrepresentation claim since there is no allegation in the complaint that such representation was untrue when made and that plaintiff relied upon the representation to its detriment. *See generally Leasco Corp. v. Taussig*, 473 F.2d 777, 782–83 (2d Cir.

---

**2.** The Goebel Defendants also have argued that plaintiff has pleaded no facts to support its allegations of price fixing, set forth in paragraph 52 of the complaint. While this position has some merit, the Court will not dismiss a portion of this paragraph since alternative allegations in paragraph 52 have been pleaded sufficiently. *Cf. Eye Encounter, Inc. v. Contour Art, Ltd.*, 81 F.R.D. 683, 689 (E.D.N.Y.1979).

1972). Accordingly, Count VI is dismissed for failure to state a claim upon which relief can be granted.

■ Count VII of the complaint alleges that the termination of the distribution agreement constitutes a breach of WGP's covenant, implied in law, that it would act in good faith and deal fairly with plaintiff. WGP argues that the January 1, 1978 distributorship agreement expressly provided that plaintiff could be terminated at any time "upon at least one year's advance written notice given at any time after December 31, 1979, and effective as of one year from the date of such written notice." WGP contends that an implied covenant of good faith and fair dealing cannot be read into a contract which by express language provides that termination may occur at any time after proper notice is given.

The distributorship agreement provides that New York law shall apply to any disputes that arise under the agreement. New York law recognizes "that in every contract there exists an implied covenant of good faith and fair dealing." *Kirke La Shelle Co. v. Armstrong Co.*, 263 N.Y. 79, 87, 188 N.E. 163 (1933). But, WGP contends that New York law strictly enforces an agreement to terminate without implying a requirement of good faith in the exercise of the cancellation clause. The "right to terminate is absolute." *New York Telephone Co. v. Jamestown Telephone Corp.*, 282 N.Y. 365, 373, 26 N.E.2d 295, 298 (1940). *See also American Machine & Metals, Inc. v. De Bothezat Impeller Co.*, 180 F.2d 342, 344 (2d Cir.), *cert. denied*, 339 U.S. 979, 70 S.Ct. 1025, 94 L.Ed. 1383 (1950); *Niagara Mohawk Power Corp. v. Graver Tank & Manufacturing Co.*, 470 F.Supp. 1308, 1313–17 (N.D.N.Y.1979); *Rubinger v. International Telephone & Telegraph Corp.*, 193 F.Supp. 711, 718 (S.D.N.Y.1961), *aff'd*, 310 F.2d 552 (2d Cir.1962), *cert. denied*, 375 U.S. 820, 84 S.Ct. 57, 11 L.Ed.2d 54 (1963); *Sharpe v. Great Lakes Steel Corp.*, 9 F.R.D. 691, 693 (S.D.N.Y.1950); *A.S. Rampell Inc. v. Hyster Co.*, 3 N.Y.2d 369, 382, 165 N.Y.S.2d 475, 144 N.E.2d 371 (1957); *Noah v. L.*

*Daitch & Co.*, 22 Misc.2d 649, 652, 192 N.Y.S.2d 380 (Sup.Ct.N.Y.Co.1959). Apparently, the good faith requirement is only applied "by the New York courts to the exercise of obligations which parties owe to each other during the term of a contract." *Niagara Mohawk Power Corp.*, 470 F.Supp. at 1316. In situations such as this, however, where the agreement provides that either party may terminate "at any time" without restriction, the weight of authority indicates that the Court should not "qualify an otherwise absolute power to terminate by requiring termination to be in good faith." *American Machine & Metals, Inc., supra*, 180 F.2d at 349. Accordingly, Count VII is dismissed for failure to state a claim upon which relief can be granted. The termination clause of the distribution agreement contains no implied requirement that it must be exercised in good faith. *But see Richard Bruce & Co. v. J. Simpson & Co.*, 40 Misc.2d 501, 504, 243 N.Y.S.2d 503, 506 (Sup.Ct.1963) (underwriter's right to terminate underwriting agreement if "in its absolute discretion" it determines that market conditions make it undesirable to continue "means ... a discretion based upon fair dealing and good faith"). *See generally* J. Calamari & J. Perillo, *The Law of Contracts* § 4–17, at 161–64 (2d ed.1977).

■ All the defendants have moved to dismiss Count VIII of the complaint which alleges a *conspiracy* to unlawfully appropriate plaintiff's business and goodwill thereby injuring and damaging plaintiff. Defendants are correct that under New York law "conspiracy, *per se*, is not a tort." *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 123 (2d Cir.1981). This does not mean, however, that plaintiff may not properly allege a conspiracy among the defendants to appropriate its business and goodwill.

A conspiracy is alleged for the purpose of showing that a wrong was committed jointly by the conspirators and that, because of their common purpose and interest, the acts of one may be imputed to the others. *Original Ballet Russe, Ltd. v. Ballet Theatre, Inc.*, 133 F.2d 187, 189

**8**

(2d Cir.1943). The allegation "is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible in damages for any overt act or acts." *Rutkin v. Reinfeld, supra,* 229 F.2d [248] at 252 [ (2d Cir.), *cert. denied,* 352 U.S. 844, 77 S.Ct. 50, 1 L.Ed.2d 60 (1956) ].

*Grove Press, Inc.,* 649 F.2d at 123. The conspiracy count, set forth at paragraphs 71 and 72 of the complaint, incorporates by reference the preceding 70 paragraphs. Contained therein are allegations that Schmid intended to reduce competition in the market for Hummel products by removing plaintiff as a competitor and to appropriate plaintiff's business and goodwill (¶ 34) and to steal plaintiff's key employees (¶ 40). The complaint further alleges that the Goebel Defendants agreed to Schmid's demand to terminate the distributorship agreement with plaintiff (¶¶ 36 & 39) and agreed to make Schmid a primary distributor and importer of Goebel-Hummel products (¶ 38). The complaint also alleges illegal combinations in violation of the federal antitrust laws, intentional interference with contractual relations (¶ 64) and intentional interference with prospective contractual relations (¶ 66). The conspiracy allegations in this case properly serve the purpose of allowing the acts of one defendant to be imputed to the other. *Grove Press, Inc.,* 649 F.2d at 123. In many respects, the complaint is similar to the allegations of conspiracy upheld by the New York Court of Appeals in *A.S. Rampell v. Hyster Co.,* 3 N.Y.2d 369, 379–80, 165 N.Y.S.2d 475, 484, 144 N.E.2d 371, 377, (1957). For these reasons the motions to dismiss Count VIII are denied.

Paragraphs 73, 74 and 75 of Count IX set forth factual averments as predicates for plaintiff's claim for an accounting of all sums paid by it to Goebel Promotion. The Goebel Defendants have moved to dismiss the accounting claim on the basis that the express language of § 5.4 of the distributorship agreement provides that plaintiff "shall have no right to an accounting or return of any promotional expenses paid by [it]." In the memorandum of law sub-

mitted in response to the Goebel Defendants' motion, plaintiff has offered to dismiss the accounting claim set forth at paragraph 76, but intends to assert the factual matters alleged in the paragraphs preceding the accounting claim. Accordingly, pursuant to Rule 12(b)(6), ¶ 76 only of Count IX is dismissed for failure to state a claim upon which relief can be granted.

## CONCLUSION

Pursuant to Rule 12(b)(6), the claims against Frieda Goebel, Eugen Stocke and Rut Stocke, Counts VI and VII and ¶ 76 of Count IX, are dismissed. In all other respects, the motions to dismiss are denied.

The parties are directed to attend a status conference with the Court on February 21, 1986 at 11:30 a.m. in Room 36 of the United States Courthouse.

SO ORDERED.