JOSEPH VICTORI WINES,
INC., Plaintiff,

v.

VIÑA SANTA CAROLINA S.A. and
Empresas Santa Carolina S.A.,
Defendants.

No. 95 Civ. 4434 (WCC).

United States District Court,
S.D. New York.

July 24, 1996.

Pryor, Cashman, Sherman & Flynn, New York City (Tom J. Ferber, Jeff Sanders, of counsel), for plaintiff.

Bleakley, Platt & Schmidt, White Plains, New York (William P. Harrington, of counsel), and The Law Offices of Sandy K. Feldman, New York City (Sandy K. Feldman, of counsel), for defendants.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge:

Plaintiff Joseph Victori Wines, Inc. ("Victori") filed this diversity action on June 9, 1995. Plaintiff asserts claims against defendants Vina Santa Carolina S.A. and Empresas Santa Carolina S.A. (collectively, "Santa Carolina") for breach of contract, breach of the implied covenant of good faith, promissory estoppel and common law fraud. Santa Carolina has moved under Fed.R.Civ.P. 56(c) for summary judgment dismissing the complaint and under Fed.R.Civ.P. 9(b) for an order dismissing plaintiff's common law fraud claim for failure to plead fraud with particularity. Santa Carolina also seeks summary judgment in its favor on its counterclaim for a declaratory judgment that the contract between the parties terminated on May 16, 1996. Plaintiff has cross-moved for summary judgment in its favor on its claim for breach of contract. For the reasons set forth below, Santa Carolina's motions are granted in part and denied in part, and plaintiff's motion is denied.

### BACKGROUND

The following facts are undisputed, unless otherwise noted. Santa Carolina produces and sells Chilean wines. Victori, a New York corporation, began importing Santa Carolina wines from Chile and distributing them in the United States approximately fifteen years ago. On January 14, 1991, the parties

entered into a written agreement. The one-page document provides, in pertinent part, that:

1. Santa Carolina names Joseph Victori Wines as exclusive importer and distributor for the United States of all Santa Carolina Wines.

 \* \* \* \* \* \*

3. Joseph Victori will promote and sell Santa Carolina Wines and will establish and manage this network in accordance with its current practice.

4. Santa Carolina and Joseph Victori will share equally in the advertising and promotional campaign as mutually agreed upon from time to time.

 \* \* \* \* \* \*

6. This agreement will remain in effect until terminated by either party on 12 months written notice. Any disputes arising from the enforcement or interpretation of this agreement, will be governed by the laws of the State of New York in the United States.

 \* \* \* \* \* \*

This agreement was signed by John Umbach, Victori's Vice President, and by Diego Errazuriz, who was Santa Carolina's Export Manager at that time. Plaintiff contends that Umbach and Errazuriz agreed orally, prior to signing the agreement, that Santa Carolina would not terminate the parties' exclusive distribution arrangement unless sales in the United States ceased to grow. Santa Carolina disputes the existence of any such understanding.

In 1993, Errazuriz left Santa Carolina, and Umbach began to work with Pedro Jaramillo, Santa Carolina's General Manager. According to Jaramillo, his responsibilities included reviewing Santa Carolina's relationships with its distributors with an eye toward increasing sales. In the fall of 1994, Jaramillo and Stephanie Billikopf, Santa Carolina's Export Manager for North America, had several meetings with Umbach. They asked Umbach to develop a proposal for a promotion and distribution program that would increase Santa Carolina's United States sales to 200,000 cases annually. On September 28, 1994,

Umbach, Jaramillo and Billikopf met at Victori's offices in New York, and Umbach presented two written program proposals. According to plaintiff, either of those proposals would have required a significant, multi-year commitment from Victori. Plaintiff contends that Jaramillo represented during the meeting that Santa Carolina would continue its relationship with Victori for the duration of whichever program Santa Carolina chose. Jaramillo asserts that he made no such assurances.

On October 13, 1994, Billikopf wrote to Umbach that Santa Carolina wanted to proceed with "Program B," which specified sales targets for 1995, 1996 and 1997. Program B also outlined the advertising and promotional budget for 1995. Plaintiff contends that by choosing Program B, Santa Carolina was representing that it would not terminate its relationship with Victori until the end of 1997.

Meanwhile, on September 29 and September 30, 1994, Santa Carolina met with two other United States distributors to begin exploring the possibility of reaching a distribution agreement with one of those companies. Santa Carolina did not inform Victori of these meetings or of the discussions with those companies that followed.

In the fall of 1994, Umbach began hearing rumors that Santa Carolina was talking to other distributors. He contends that between October 1994 and January 1995, Jaramillo and Billikopf assured him on several occasions that Santa Carolina was not involved in discussions with other distributors that could affect Victori's exclusive distribution agreement with Santa Carolina. Santa Carolina disputes this assertion.

In early February 1995, Umbach again heard rumors that Santa Carolina was negotiating with other distributors. On February 6, 1995, Umbach faxed a letter to Jaramillo seeking information about the rumors. On February 7, Umbach received, by fax, a letter from Claire Besanceney, Santa Carolina's Export Manager for Europe. That letter explained that she had spoken with Jaramillo, who was away from the office, and that he had asked her "to answer on his behalf that Santa Carolina will continue its long relation-

ship with Joseph Victori Wines." Besanceney's letter also advised Umbach that Jaramillo was aware that Salvador Correa, another Santa Carolina executive, was travelling in the United States but that Jaramillo had no information about the meetings that Correa was attending. Plaintiff has submitted correspondence that it obtained in discovery that indicates that Correa and Jaramillo planned to attend meetings with another United States distributor on February 6 and 7. Jaramillo acknowledges that Santa Carolina did not inform Victori of these meetings but asserts that he told Besanceney to inform Umbach only that Santa Carolina had made no decision to terminate Victori and that the parties' relations were continuing.

On February 21, 1995, Umbach sent a letter to Jaramillo stating that although the 1991 contract remained in effect, he would like to sign a new contract. The proposed agreement that he enclosed was quite similar to the 1991 written agreement, except that it provided for an initial five-year term that would be automatically renewed for successive one-year periods unless either party gave written notice of termination twelve months in advance of the expiration of the current term.

On February 28, 1995, Umbach wrote to Billikopf, enclosing a copy of the 1991 written agreement and stating that the 1991 contract remained in force and that Santa Carolina would be responsible for any breach of that agreement. By letter dated March 8, 1995, to Billikopf, Umbach repeated that although the 1991 contract remained in effect, he wanted to sign a new agreement. He explained that his desire for a new contract was based in part on the fact that Santa Carolina had changed management since 1991.

By letter dated March 20, 1995, Jaramillo informed Umbach that Santa Carolina would not sign the proposed agreement but that it would sign a new contract similar to the 1991 written agreement. By letter dated March 22, 1995, Umbach accepted this proposal and on March 30, 1995, mailed to Jaramillo a copy of a proposed agreement substantially identical to the 1991 written agreement.

On April 10, 1995, Umbach, Jaramillo and Correa met in New York. According to Jar-amillo, he and Correa informed Umbach at that meeting that Santa Carolina was considering changing to a larger United States distributor. They told Umbach that under those circumstances, they did not consider it appropriate to sign a new contract and preferred to continue to operate under the 1991 agreement. Umbach asserts that he informed Correa and Jaramillo at that time that Santa Carolina did not have the right to terminate Victori since United States sales were increasing. Umbach also maintains that Correa and Jaramillo downplayed the likelihood of Santa Carolina deciding to change distributors. Correa and Jaramillo dispute these assertions.

By letter dated May 16, 1995, and sent the next day, Santa Carolina gave Victori written notice of termination. On May 17, 1995, Santa Carolina reached an agreement with another United States distributor that provided, in essence, that upon termination of the distribution agreement between Santa Carolina and Victori, Santa Carolina would enter into a distribution agreement with the other distributor.

On May 31, 1995, Correa and Jaramillo met with Umbach in New York. At that meeting, Jaramillo was served with a summons and notice indicating that Victori had filed suit against Santa Carolina in New York state court. Santa Carolina removed the case to this court.

## DISCUSSION

Summary judgment should be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law. . . ." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). No genuine issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict for that party. *See id.,* at 248–49, 106 S.Ct. at 2510–11. In order to defeat a motion for summary judgment, the nonmoving party must "go beyond the pleadings and . . .

designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The burden on the nonmoving party is tempered, however, by the rule that "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

## I. Plaintiff's Claims

### A. Breach of Contract

Plaintiff has alleged that Santa Carolina breached the distribution agreement between the parties by attempting to terminate it in violation of the parties' understanding that Santa Carolina could only terminate Victori if United States sales of Santa Carolina wines ceased to grow. Santa Carolina seeks summary judgment dismissing this claim, while plaintiff seeks summary judgment in its favor.

 Under New York law,[1] where the parties to a contract have agreed to a written termination clause, it must be enforced as written. *See Colman & Hirschmann, Inc. v. Little Tikes, Inc.*, 1986 WL 4688, at *5 (S.D.N.Y. Apr. 17, 1986); *Niagara Mohawk Power Corp. v. Graver Tank & Mfg. Co.*, 470 F.Supp. 1308, 1314 (N.D.N.Y.1979); *A.S. Rampell, Inc. v. Hyster Co.*, 3 N.Y.2d 369, 165 N.Y.S.2d 475, 486, 144 N.E.2d 371, 379 (N.Y.1957); *Noah v. L. Daitch & Co.*, 22 Misc.2d 649, 192 N.Y.S.2d 380, 385 (Sup.Ct. 1959). Furthermore, where a contract containing a written termination clause is silent as to whether cause is required for termination, the contract is terminable without cause. *See Colman*, 1986 WL 4688, at *5; *Noah*, 192 N.Y.S.2d at 385. In this case, the written termination clause to which the parties agreed states that "[t]his agreement will remain in effect until terminated by either party on 12 months written notice." Exhibit A, attached to Affidavit of Pedro Jaramillo, dated Aug. 17, 1995. This clause, obviously, is silent as to whether cause is required for termination. Therefore, Santa Carolina could terminate Victori at will, upon twelve months written notice.

 Plaintiff seeks to alter this result by presenting evidence that prior to signing the 1991 written agreement, Umbach and Errazuriz reached an oral agreement that Santa Carolina could not terminate the parties' contract unless its United States sales ceased to grow. This evidence is, however, barred by the parol evidence rule. The Second Circuit has stated the parol evidence rule as follows:

> When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

*Garza v. Marine Trans. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir.1988). If the writing is not integrated, of course, parol evidence of additional contract terms may be admitted to complete the agreement, so long as the additional terms do not contradict the written terms. *See US West Financial Servs., Inc. v. Tollman*, 786 F.Supp. 333, 342 (S.D.N.Y. 1992). Parol evidence may also be considered to aid in interpreting ambiguities in the terms of an integrated written agreement. *See Garza*, 861 F.2d at 27. The issues of whether a written agreement is integrated and whether any of its terms are ambiguous are questions of law for the court to decide. *See Garza*, 861 F.2d at 27; *Adler & Shaykin v. Wachner*, 721 F.Supp. 472, 476 (S.D.N.Y. 1988) (Walker, J.).

 Typically, the first step in our analysis would be to determine whether the 1991 written agreement is a complete and accurate integration of the parties' contract. *See Adler*, 721 F.Supp. at 476. In this case, however, we need not resolve this issue. If we were to conclude that the 1991 written agreement is not integrated, the parol evidence rule would nevertheless bar evidence of the alleged oral agreement that Santa Carolina could terminate the parties' contract only if its United States sales ceased to grow. Parol evidence of an additional contract term is not admissible, even to supplement the

1. The parties agree that New York law governs the claims asserted in this action.

353

terms of an otherwise incomplete written agreement, where the proposed additional term contradicts the terms of the written agreement. *See US West,* 786 F.Supp. at 342. The written termination clause at issue here provides that either party may terminate the other upon twelve months written notice. It contains no limitations on the circumstances under which either party may elect to terminate the agreement. The alleged oral agreement would limit the circumstances under which Santa Carolina could terminate the parties' contract. Therefore, the alleged oral agreement contradicts the written termination clause.

 If, on the other hand, we were to conclude that the 1991 written agreement is integrated, we could consider parol evidence only as an aid in interpreting an ambiguous provision in the written agreement. *See Garza,* 861 F.2d at 27. A contract provision is ambiguous "when it is capable of more than a single meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Garza,* 861 F.2d at 27 (internal quotation omitted). It is clear from a reading of the written termination clause that it has only one reasonable meaning: that either party could terminate the 1991 agreement, subject only to the requirement that the terminating party provide twelve months written notice. The written termination provision is therefore unambiguous, and we may not consider parol evidence as an aid to its interpretation.

Because the termination clause contained in the 1991 written agreement permitted Santa Carolina to terminate Victori at will upon twelve months written notice, Santa Carolina did not breach the parties' contract by giving plaintiff written notice of termination by letter dated May 16, 1995. Therefore, Santa Carolina is entitled to summary judgment dismissing plaintiff's claim for breach of contract, and plaintiff's cross-motion for summary judgment on this claim is denied.

**B. Breach of Implied Covenant of Good Faith**

 Under New York law, every contract contains an implied covenant of good faith and fair dealing. *See Alco Standard Corp. v. Schmid Bros., Inc.,* 647 F.Supp. 4, 7 (S.D.N.Y.1986). Plaintiff asserts that Santa Carolina breached this implied covenant by terminating the parties' contract. Santa Carolina seeks summary judgment dismissing this claim.

 The New York courts apply this good faith requirement only to " 'the exercise of obligations which parties owe to each other during the term of a contract.' " *Id.* (quoting *Niagara Mohawk,* 470 F.Supp. at 1316); *see Lake Erie Distributors, Inc. v. Martlet Importing Co.,* —— A.D.2d ——, 634 N.Y.S.2d 599, 602 (1995). Where a termination clause permits the parties to terminate an agreement at will on twelve months written notice, the courts do not "qualify an otherwise absolute power to terminate by requiring termination to be in good faith." *Alco,* 647 F.Supp. at 7 (internal quotation omitted). In short, a termination clause like the one at issue in this case "contains no implied requirement that it must be exercised in good faith." *Id.*

Accordingly, Santa Carolina is entitled to summary judgment dismissing this claim.

**C. Promissory Estoppel**

 On September 28, 1994, Umbach presented two proposed promotion and distribution plans to Jaramillo and Billikopf. Plaintiff has alleged that during that meeting, Jaramillo promised that Santa Carolina would not terminate the parties' contract until after the completion of whichever promotional plan Santa Carolina selected. Santa Carolina subsequently chose Program B, which contained sales projections for 1995, 1996 and 1997. *See* Exhibit B, attached to Jaramillo Aff. Plaintiff alleges that in reliance on Jaramillo's promise, it incurred substantial expenses, above and beyond its obligations under the 1991 written agreement, that were necessary to achieve the long-term sales goals set by Program B. Plaintiff asserts that Jaramillo's alleged promise

is enforceable under theory of promissory estoppel.[2] Santa Carolina seeks summary judgment dismissing this claim.

■ Under New York law, "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee, and which does induce such action or forbearance, is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise." *D & N Boening, Inc. v. Kirsch Beverages, Inc.*, 99 A.D.2d 522, 471 N.Y.S.2d 299, 302, *aff'd*, 63 N.Y.2d 449, 483 N.Y.S.2d 164, 472 N.E.2d 992 (1984). The New York courts have approached this doctrine with caution, however, and its application is limited to the class of cases in which it would be unconscionable not to enforce the alleged oral promise. *See id.*

This case does not fall within that limited class. Assuming for the sake of argument that Jaramillo made the alleged oral promise, plaintiff is hardly left high and dry if that promise is not enforced. Under the 1991 written agreement, plaintiff has the twelve-month period following notice of termination in which to find another supplier. Plaintiff bargained for this protection and, indeed, repeatedly asserted in February and March 1995 that the 1991 written agreement that contained this provision governed the parties' relationship. *See* Exhibits F, G, H, L, M, attached to Jaramillo Aff. (letters from Umbach to Santa Carolina personnel). Plaintiff's correspondence reveals that it was aware of the risk of making long-term commitments while it was operating under the 1991 agreement. *See* Exhibit F, attached to Jaramillo Aff. (letter from Umbach to Jaramillo proposing contract with five-year term and discussing need for Victori to make long-term commitments to shippers and retail outlets). Apparently, plaintiff chose to accept

that risk, as it allegedly made expenditures that it was not obligated to make under the 1991 agreement in order to achieve long-term United States sales growth for itself and for Santa Carolina.[3] *Cf. D & N Boening*, 471 N.Y.S.2d at 302. Under these circumstances, we do not believe that plaintiff's alleged injury is so egregious that it would be unconscionable not to enforce Jaramillo's oral promise.

Therefore, Santa Carolina's motion for summary judgment dismissing plaintiff's claim for promissory estoppel is granted.

## D. Fraud

■ Finally, plaintiff has alleged that Santa Carolina committed common law fraud by falsely representing that it would not terminate the parties' contract prior to the conclusion of Program B and that it was not seeking a United States distributor to replace Victori. In order to prove common law fraud, plaintiff must demonstrate "(1) that there was a material, false representation, (2) made with knowledge of its falsity, and (3) an intent to defraud (4) that plaintiff reasonably relied on, (5) causing the plaintiff damage." *Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir.1993), *cert. denied*, 510 U.S. 1112, 114 S.Ct. 1056, 127 L.Ed.2d 376 (1994). Plaintiff must establish that Santa Carolina made the misrepresentations at issue with the present intention of deceiving plaintiff; mere representations of future intention that were not knowingly false when made are not sufficient to support a claim for common law fraud. *See Sanyo Electric, Inc. v. Pinros & Gar Corp.*, 174 A.D.2d 452, 571 N.Y.S.2d 237, 238 (1991). Santa Carolina seeks summary judgment dismissing this claim.

■ Santa Carolina argues that there is no evidence from which a reasonable jury could conclude that it made any misrepresen-

2. Despite a reference in the complaint to a "three-year distribution agreement," *see* Complaint, at ¶ 22, plaintiff does not argue that Jaramillo's alleged promise constitutes an oral contract between the parties for a three-year distribution arrangement. Indeed, such an argument could not succeed, as an oral distribution agreement that could not be terminated until the completion of Program B, three years later, would be unenforceable under the Statute of Frauds. *See* N.Y.Gen.Obl.Law § 5–

701(a)(1) (contract void, unless in writing, where cannot be performed within one year).

3. As we discuss below, plaintiff contends that it made these expenditures in reliance on fraudulent misrepresentations made by Santa Carolina. If plaintiff is able to prove those allegations, it may be able to recover damages on its claim for common law fraud.

tations with the present intention of deceiving plaintiff. We are not persuaded. First, plaintiff has demonstrated that a question of fact exists regarding whether Santa Carolina represented that it would not exercise its termination rights under the 1991 distribution agreement until after the completion of Program B. Plaintiff asserts that on September 28, 1994, during the meeting at which Umbach presented two promotional proposals to Jaramillo and Billikopf, Jaramillo represented that Santa Carolina would not terminate the parties' relationship until the completion of whichever program Santa Carolina selected. *See* Affidavit of John Umbach, dated Oct. 16, 1995, at ¶ 26. Jaramillo has denied making this statement.[4] *See* Jaramillo Aff., at ¶ 14. We must leave to the jury the question of which individual's testimony is more credible.

Second, plaintiff has demonstrated that a question of fact exists concerning whether Santa Carolina represented to plaintiff that it was not meeting with other distributors. Plaintiff has asserted that on several occasions between October 1994 and January 1995, Jaramillo and Billikopf gave him verbal assurances that Santa Carolina was not meeting with other United States distributors about any matters that related to Victori's exclusive distributorship. *See* Umbach Aff., at ¶ 31. Furthermore, on February 7, 1995, Besanceney faxed a letter to Umbach in response to his inquiry concerning rumors that Santa Carolina was talking other distributors. In that letter, Besanceney stated that Jaramillo, who was out of the office at the time, had asked her to respond that "Santa Carolina will continue its long relationship with Joseph Victori Wines" and that Jaramillo had no information about meetings that Correa was attending in the United States. *See* Exhibit E, attached to Jaramillo Aff. Jaramillo has stated that he asked Besanceney to relay to Umbach only the true statement that Santa Carolina had made no decision to terminate its contract with Victori and that the parties' relationship was continuing. *See* Jaramillo Aff., at ¶ 17.

Furthermore, plaintiff asserts that Santa Carolina made these representations with a present intention to deceive plaintiff because Santa Carolina planned, throughout this time period, to replace Victori with another United States distributor. Plaintiff points out that Jaramillo and other Santa Carolina employees began meeting with other United States distributors on September 29, 1994— only one day after Jaramillo allegedly represented to plaintiff that Santa Carolina would not terminate its relationship with plaintiff until Program B was completed. Plaintiff has also submitted correspondence that indicates that Correa and Jaramillo were planning to attend, together, meetings with other United States distributors on February 6 and 7, 1995. *See* Exhibit K, attached to Umbach Aff. Nevertheless, Besanceney's letter dated February 7, 1995, informed Umbach that Jaramillo had no information about the meetings that Correa was attending in the United States. Based on this evidence, a reasonable jury could conclude that Santa Carolina made material, false representations with a present intention to deceive plaintiff, or it could reach the opposite result. We cannot resolve these disputed questions of fact on summary judgment.

■■■■ Santa Carolina next argues that plaintiff's common law fraud claim must be dismissed because plaintiff was contractually obligated, rather than fraudulently induced, to make any expenditures that it incurred in promoting Santa Carolina's wines. Under New York law, plaintiff "cannot be induced to tender a performance which is required as a part of a preexisting contractual obligation." *Megaris Furs, Inc. v. Gimbel Bros., Inc.*, 172 A.D.2d 209, 568 N.Y.S.2d 581, 584 (1991). Plaintiff does not disagree with this statement of the law. It contends, however, that in reliance on Santa Carolina's representations, it expended approximately $350,000 more than it was obligated to spend under the 1991 distribution agreement in order to achieve the three-year sales goal set in Program B. Plaintiff asserts that beginning in

---

4. The correspondence between the parties relating to Santa Carolina's selection of Program B neither supports nor contradicts either man's testimony. Those letters state only that Santa Carolina has selected Program B and that it agrees to plaintiff's proposed advertising budget for 1995. *See* Exhibits C, D, attached to Jaramillo Aff.

mid-October 1994, it incurred these expenses by increasing advertising, promotional efforts and credits to purchasers of Santa Carolina wines, by selling Santa Carolina wines at no profit or at a loss in order to open up new markets, by hiring additional personnel and by foregoing other business opportunities.

Santa Carolina contends that the 1991 agreement obligated plaintiff to use its best efforts to promote Santa Carolina wines and that any expenditures that it made were therefore required under the 1991 agreement. Contrary to Santa Carolina's assertion, however, the 1991 agreement does not obligate plaintiff to use its best efforts to promote Santa Carolina wines. Instead, it states that Victori will promote Santa Carolina's products in accordance with its then-current practice and will pay half of the agreed-upon advertising and promotional budget. *See* Exhibit A, attached to Jaramillo Aff. Victori's half of the 1995 advertising and promotion budget was only $32,000. *See* Exhibit C, attached to Jaramillo Aff. We have no information at this time about the parties' 1994 advertising and promotion budget or about the level of spending associated with Victori's usual practice in promoting Santa Carolina's wines. Therefore, we cannot determine whether Victori's obligations under the 1991 agreement required it to spend any or all of the approximately $350,000 that plaintiff contends it spent promoting Santa Carolina wines after Santa Carolina selected Program B on October 13, 1994.

 Santa Carolina also contends that after April 10, 1995, plaintiff could not, as a matter of law, have reasonably relied on the alleged representations that Santa Carolina was not meeting with other United States distributors and that it would not terminate Victori until after the completion of Program B. We agree. On that date, Jaramillo, Correa and Umbach met in New York, and Jaramillo and Correa informed Umbach that Santa Carolina was considering engaging another United States distributor and that it would not agree to sign a new contract. *See* Jaramillo Aff., at ¶¶ 27–28. Although Umbach asserts that Jaramillo and Correa downplayed the likelihood of Santa Carolina deciding to change distributors, he does not

dispute that he was told of that possibility. *See* Umbach Aff., at ¶¶ 43–44. Any reliance that he placed on the alleged misrepresentations after he received that information was clearly unreasonable as a matter of law.

Therefore, Santa Carolina's motion for summary judgment dismissing plaintiff's common law fraud claim is granted with respect to alleged reliance after April 10, 1995, but is otherwise denied.

 Santa Carolina has also made a motion under Rule 9(b) seeking dismissal of plaintiff's common law fraud claim for failure to plead fraud with particularity. Under Rule 9(b), plaintiff must "state precisely what material misstatements were made, the time and place of each misstatement, the speaker, the content, the manner in which the statement was misleading, and what the defendants 'obtained' as a result of the fraud." *Morin v. Trupin,* 823 F.Supp. 201, 205 (S.D.N.Y.1993). The complaint in this case satisfies several of these requirements, as it sets forth the content of the alleged misstatements, states the time and place of some of them, describes how they were misleading and explains what Santa Carolina allegedly obtained as a result of the misstatements. The complaint does not, however, contain allegations specifically setting forth all of the misstatements to which plaintiff refers in its motion papers. *Compare* Complaint, at ¶ 28(b) *with* Umbach Aff., at ¶ 31. It also fails to identify the speaker of any of the misstatements.

Nonetheless, Santa Carolina has already filed a responsive pleading and, as is evident from the discussion above, document discovery and the testimony in Umbach's affidavit have already fleshed out plaintiff's allegations. Dismissing plaintiff's fraud claim or requiring plaintiff to file an amended complaint at this point in order to correct relatively minor deficiencies in the pleading would merely be an inefficient, overly technical exercise. Therefore, Santa Carolina's motion under Rule 9(b) is denied.

## II. Santa Carolina's Counterclaim

Finally, Santa Carolina seeks summary judgment on its counterclaim for a declarato-

ry judgment that the 1991 agreement terminated on May 16, 1996. The parties do not dispute that Santa Carolina gave plaintiff written notice of termination by letter dated May 16, 1995 and sent the following day. *See* Exhibit P, attached to Jaramillo Aff; Jaramillo Aff., at ¶ 31. Umbach has acknowledged that plaintiff received that letter on or about May 17, 1995. *See* Umbach Aff., at ¶ 37. The termination clause in the 1991 written agreement, which we have concluded may not be varied or contradicted by the introduction of parol evidence, provides that the agreement is terminable on twelve months written notice. Therefore, the 1991 agreement between Santa Carolina and Victori terminated on May 17, 1996, and Santa Carolina is entitled to the entry of a declaratory judgment to that effect.

## CONCLUSION

For the foregoing reasons, we grant Santa Carolina's motion for summary judgment dismissing plaintiff's claims for breach of contract, breach of the implied covenant of good faith and promissory estoppel. We deny plaintiff's cross-motion for summary judgment on its breach of contract claim. Santa Carolina's motion for summary judgment dismissing plaintiff's claim for common law fraud is granted with respect to alleged reliance after April 10, 1995, but is otherwise denied. We deny Santa Carolina's motion under Rule 9(b) to dismiss plaintiff's common law fraud claim for failure to plead fraud with particularity. Finally, we grant Santa Carolina's motion for summary judgment on its first counterclaim and enter a declaratory judgment that the 1991 agreement terminated on May 17, 1996.

SO ORDERED.