641 So.2d 158 (1994)
REGAL KITCHENS, INC., Appellant,
v.
FLORIDA DEPARTMENT OF REVENUE, Appellee.
No. 93-994.
District Court of Appeal of Florida, First District.
July 29, 1994.
*160 J. Riley Davis of Katz, Kutter, Haigler, Alderman, Marks and Bryant, Tallahassee, and Stanton G. Levin, P.A., Coral Gables, for appellant.
Robert A. Butterworth, Atty. Gen., and Jarrell L. Murchison, Asst. Atty. Gen., Tallahassee, for appellee.
Cynthia S. Tunnicliff of Pennington & Haben, Tallahassee, for amicus curiae Florida Auto. Dealers Ass'n.
Harold F.X. Purnell of Rutledge, Ecenia, Underwood & Purnell, P.A., Tallahassee, for amicus curiae Lodge Enterprises, Inc.
Bernard A. Barton, Jr., Douglas A. Wright, and Laurel J. Lenfestey of Holland & Knight, Tampa, for amicus curiae Anchor Glass Container Corp.
PADOVANO, Philip J., Associate Judge.
This is an appeal from a declaratory statement issued by the Department of Revenue. The appellant, Regal Kitchens, Inc., has advanced two arguments for reversal: (1) the declaratory statement is impermissibly broad in that it purports to declare a general policy that applies to an entire class of taxpayers, and (2) the position asserted by the Department on the merits of the case is incorrect. We have concluded that the first argument is meritorious and that portions of the declaratory *161 statement must be stricken. However, because we find no error in the Department's position on the merits, those portions of the declaratory statement specifically addressing the transaction in this case are affirmed.
Central to the tax controversy between the immediate parties is a dispute regarding the nature of the legal relationship between a corporation, a general partnership, and four individuals. The corporation, Regal Kitchens, conducts its business operations on improved real property owned by a general partnership known as 8600 Associates. The property consists of a manufacturing plant and offices. Four individuals are the principal owners of both the corporation and the partnership. Each of the principals owns stock in Regal Kitchens, Inc., in the same proportion that he owns his separate partnership interest in 8600 Associates.
The real property was once owned by Regal Kitchens subject to a mortgage in favor of the Banker's Life Company. In 1977, Regal decided to sell the property to 8600 Associates, and to lease it back. After the sale and leaseback, 8600 Associates assumed liability for payment of the note and mortgage to Banker's Life and Regal remained liable on the note. In 1981, Regal Kitchens obtained a loan from the Merchants Bank of Miami and used the equity in the property owned by 8600 Associates as collateral. At that time, 8600 Associates gave the Merchants Bank a second mortgage on the property. The loan agreement with Merchants Bank provides that a default on the first mortgage is a default on the second. Additionally, the four principals in Regal Kitchens and 8600 Associates guaranteed payment to Merchants Bank.
The agreement between Regal Kitchens and 8600 Associates was reduced to writing in the form of a commercial lease. According to the most recent version of the lease, Regal Kitchens pays rent each month and 8600 Associates applies the rental income to its payments on the first and second mortgages on the property and the insurance and taxes. There is no profit to 8600 Associates. The rent payments received from Regal do not exceed the total financial obligation by 8600 Associates for the expenses and the debt service. 8600 Associates is not engaged in any other business. Apparently, the partnership was formed for the sole purpose of taking title to the real property and leasing it back to Regal Kitchens.
Regal Kitchens formally requested that the Department of Revenue issue a technical assistance advisement to address the applicability of the sales tax laws to the transaction between Regal and 8600 Associates. On April 24, 1992, the Department answered by informing Regal Kitchens that the rental income paid to 8600 Associates under the written lease is taxable under chapter 212, Florida Statutes, and that it is not subject to any exemption. Regal then filed the petition for declaratory statement that has become the subject of this appeal. On March 2, 1993, the Department of Revenue issued the Declaratory Statement, once again taking the position that the rent paid by Regal Kitchens to 8600 Associates is subject to sales tax under chapter 212, the Florida Revenue Act.
The Department reasoned that the transaction was taxable under section 212.031, Florida Statutes (1989), and that Regal Kitchens was not entitled to a tax exemption under rule 12A-1.070(19)(c). This exemption applies if the consideration paid by one corporation to a related corporation for the use of property is equal to a debt secured by the property and if each of the corporations is equally liable on the debt. However, the Department concluded that Regal was not equally liable and that the exemption could not be used in a situation such as this, in which the owner is a general partnership and the operator is a corporation. In the process, the Department made a detailed analysis of rule 12A-1.070(19)(c).
The first issue is whether the declaratory statement is impermissibly broad. We conclude that it is. Section 120.565, Florida Statutes (1989), states in part that "[a] declaratory statement shall set out the agency's opinion as to the applicability of a specified statutory provision or of any rule or order of the agency as it applies to the petitioner in his particular set of circumstances only." This statute limits the use of a declaratory statement to an expression of the agency's position on an issue raised by an *162 individual petitioner in a particular set of facts. As this court observed in Florida Optometric Association v. Department of Professional Regulation, 567 So.2d 928, 937 (Fla. 1st DCA 1990), an administrative agency may not use a declaratory statement as a vehicle for the adoption of a broad agency policy or to provide statutory or rule interpretations that apply to an entire class of persons.
The declaratory statement in this case goes well beyond an expression of the Department's position on the issue presented by Regal Kitchens. The Department concluded that Regal Kitchens was not entitled to claim the exemption in rule 12A-1.070(19)(c) for rental payments between related corporations because the exemption must be strictly construed and because it does not apply to a rental payment made by a corporation to a general partnership. However, the declaratory statement was not limited to an analysis of the applicability of exemption under rule 12A-1.070(19)(c). On the contrary, much of the discussion is devoted to an expression of the Department's view that there is no statutory basis for the exemption. The Department disclaimed an intent to nullify the rule 12A-1.070(19)(c) exemption by stating that the rule "was duly promulgated and will be respected until it is repealed." Yet the message sent by the declaratory statement to a broad class of taxpayers was clear: the Department has concluded that the exemption stated in rule 12A-1.070(19)(c) for related corporations is not valid. An administrative agency cannot effectively repudiate one of its own rules by making a contrary expression in a declaratory statement.
Although the declaratory statement contains a detailed explanation of the Department's position regarding the validity of rule 12A-1.070(19)(c), that reasoning is not necessary to support the conclusion. If the exemption does not apply to Regal Kitchens, as the Department maintains, then the Department has no cause to express an opinion on the validity of the exemption. Despite this error, it is possible for the court to separate the part of the declaratory statement that properly addresses the tax consequences of the Regal Kitchens transaction from those parts of the declaratory statement that are improper expressions of general agency policy. A declaratory statement may be affirmed in part to the extent that it is proper, if the improper parts are severable. Mental Health Dist. Bd. v. Florida Dep't of Health and Rehabilitative Services, 425 So.2d 160 (Fla. 1st DCA 1983). Applying this principle, the court strikes out only those portions of the declaratory statement that address the validity of the tax exemption afforded by rule 12A-1.070(19)(c).
The next issue is whether the Department was correct on the merits of its determination that the rent paid by Regal Kitchens to 8600 Associates is taxable. Declaratory statements are subject to judicial review under section 120.68 of the Administrative Procedure Act, but an appellate court may reverse a declaratory statement only if the agency's interpretation of the law is clearly erroneous. Grady v. Department of Professional Regulation, 402 So.2d 438 (Fla. 3d DCA), appeal dismissed, 411 So.2d 382 (Fla. 1981).
Section 212.031, Florida Statutes (1993), provides in part that "every person is exercising a taxable privilege who engages in the business of renting, leasing, letting, or granting a license for the use of any real property." Regal Kitchens maintains that the transaction in this case is not taxable because 8600 Associates is not engaged in the business of leasing property. We disagree. 8600 Associates was established for the sole purpose of taking title to the property and leasing it back to Regal Kitchens. On these facts it appears that 8600 Associates is in the business of leasing property. In fact, that is its only business.
The term "business" is defined in subsection 212.02(2), Florida Statutes (1993), as "any activity engaged in by any person, or caused to be engaged in by him, with the object of private or public gain, benefit, or advantage, either direct or indirect." This definition is broad enough to encompass many different forms of rental arrangements, including the transaction in this case. See, e.g., Kirk v. Western Contracting Corp., 216 So.2d 503 *163 (Fla. 1st DCA), cert. denied, 225 So.2d 535 (Fla. 1969). The stockholders of Regal Kitchens would not have titled the property in the name of a partnership and leased it back unless there was some benefit inherent in that arrangement. Nothing in subsection 212.02(2) Florida Statutes (1989), suggests that the term "business" is limited to those who engage in regular course of dealing with different clients or customers. A person who rents a single duplex unit is engaged in business as is the owner of an apartment who rents thousands of units.
Regal Kitchens relies on Lord Chumley's of Stuart, Inc. v. Department of Revenue, 401 So.2d 817 (Fla. 4th DCA 1981), but that case is distinguishable here. The relationship between the owner of the property and the corporations operating businesses in Lord Chumley's was that of trustee and beneficiary. The corporations each paid the mortgage payments, taxes, insurance, and other expenses and no payments were made directly to the owner. The court was justified in its conclusion that there was no sales tax due because there was no rental agreement and no rental income of any kind. In contrast, the relationship between Regal Kitchens and 8600 Associates is that of landlord and tenant. The Department has distinguished Lord Chumley's by pointing out that this case involves a written lease agreement. However, the issue should not turn on whether a rental agreement is reduced to writing. A more fundamental distinction is that the sales tax was not due under the facts of Lord Chumley's case because there was no rental agreement of any kind. The character of the relationship between the owner of the land and the operator of the business of the land was not that of a landlord and tenant.
Regal Kitchens contends that the payments cannot be regarded as "rent" because 8600 Associates is merely the "alter ego" of Regal Kitchens. Specifically, Regal argues that "[t]he effect of the relationship between the parties and the `lease arrangement' is that four individuals own and `lease' the subject real estate to themselves and pay the mortgage indebtedness represented by a first and second mortgage." This argument puts Regal Kitchens in the unusual position of a corporation attempting to pierce its own corporate veil. Having set up a corporation, ostensibly for the purpose of establishing itself as a separate legal entity, Regal now argues that it is actually not distinct from the related partnership, 8600 Associates. Regal's characterization of the transaction is inconsistent with the corporation laws and the terms of the lease itself.
Those who seek the protection afforded by incorporation must also accept the burdens. Individuals may incorporate to shield themselves from personal liability, or for many other reasons, but they may not then disavow the existence of the corporation for the purpose of obtaining a tax advantage. This is not a case in which nominal parties to a business venture are "paying rent to themselves" as Regal argues. On the contrary, this is a case in which a corporation is paying rent to a general partnership.
The argument that Regal Kitchens is merely an "alter ego" of 8600 Associates is also belied by the language of the lease. Paragraph 27 states: "[i]t is expressly understood that the Landlor[d] shall not be construed or held to be a partner or associate of the Tenant in the conduct of its business. The relationship between the parties hereto is and shall remain at all times that of Landlord and Tenant." Having characterized its own relationship strictly as that of a "tenant" of 8600 Associates, Regal Kitchens is not in a position to argue that the Department of Revenue is powerless to collect sales taxes due the State of Florida for the rental income. Nor should the court participate in an effort to recharacterize Regal Kitchen's status as a tenant, for that would only assist the owners in avoiding the consequences of their own decision to incorporate.
The Department correctly determined that Regal Kitchens was not entitled to claim the exemption stated in rule 12A-1.070(19)(c). To establish a valid claim to the exemption, the taxpayer must show that the consideration is paid by one corporation to a related corporation for the use of land, that the consideration is equal to an amount of the debt owed by the related corporation and secured by the property, and that both corporations *164 are equally liable on the debt. The Department concluded that Regal was not "equally liable" on the debt because its position with regard to the second mortgage was merely that of guarantor, and that the exemption could not be applied to a corporation that is related to a partnership. We cannot say that this conclusion is clearly erroneous. A tax exemption must be strictly construed against the party claiming the exemption. State Department of Revenue v. Anderson, 403 So.2d 397 (Fla. 1981); State ex rel. Szabo Food Services, Inc. of North Carolina v. Dickinson, 286 So.2d 529 (Fla. 1973); Green v. Pederson, 99 So.2d 292 (Fla. 1957). If the exemption at issue is strictly construed it must be limited to its terms and applied only to related corporations. The Department has no duty, and arguably no right, to extend the exemption beyond its terms so that it applies to all related party leases.
Finally, the admitted conflict between the declaratory statement and technical assistance advisements previously issued by the Department in other cases is not a ground for reversal. We are mindful of the rule that an administrative agency may not reject a widespread policy established by usage or stated by it and relied upon by the public, Walker v. State Dep't of Transp., 366 So.2d 96 (Fla. 1st DCA 1979); Outdoor Advertising Art Inc. v. Florida Dep't of Transp., 366 So.2d 114 (Fla. 1st DCA 1979); Price Wise Buying Group v. Nuzum, 343 So.2d 115 (Fla. 1st DCA 1977), but this rule does not apply here because a technical assistance advisement is not an expression of policy. Subsection 213.22(1), Florida Statutes (1989), states:
... Technical assistance advisements shall have no precedential value except to the taxpayer who requests the advisement and then only for the specific transaction addressed in the technical assistance advisement ... A technical assistance advisement is not an order issued pursuant to s. 120.565 or s. 120.59, or a rule or policy of general applicability under s. 120.54.
Regal's claim that the declaratory statement is invalid because it is in conflict with previous technical assistance advisements cannot be sustained in view of the plain wording of this statute. If a technical assistance advisement is not a policy of general applicability, the Department cannot be said to have violated its policy simply by taking a new position in a declaratory statement. If that were the case, the Department could never recover from a mistake or revise an interpretation in a previous technical assistance advisement.
This conclusion does not alter the Department's duty to give equal treatment to similarly situated taxpayers. An aggrieved taxpayer can raise an equal protection claim if the Department is engaging in any form of selective or discriminatory taxation. However, these kinds of claims are not yet ripe for review in this case. A claim of discrimination in taxation could be made only after the tax is enforced, and it could be reviewed only after the agency has an opportunity to address the issue in a hearing in which evidence is presented and a record is made. At present, the only issue for review before this court is the validity of a declaratory statement. The stipulation that the statement is inconsistent with previous technical assistance advisements, without more, is not a reason to find it invalid.
For these reasons we uphold the portions of the declaratory statement that are addressed to the facts of this case and reject the remaining portions on the ground that they are invalid. The declaratory statement is affirmed in part and reversed in part.
SMITH and MINER, JJ., concur.