697 So.2d 1313 (1997)
S & W AIR VAC SYSTEMS, INC., Appellant,
v.
DEPARTMENT OF REVENUE, STATE OF FLORIDA, Appellee.
No. 96-2936.
District Court of Appeal of Florida, Fifth District.
August 22, 1997.
*1314 Patrick F. Roche and J. Patrick Anderson, of Frese, Nash & Torpy, P.A., Melbourne, for Appellant.
Robert A. Butterworth, Attorney General, and Joseph C. Mellichamp, III, Senior Assistant Attorney General; James McAuley and Elizabeth T. Bradshaw, Assistant Attorneys General, Tallahassee, for Appellee.
GRIFFIN, Chief Judge.
S & W Air Vac Systems, Inc. ["S & W"] appeals a final administrative decision by the Department of Revenue ["the Department"] which adopted a hearing officer's recommendation that S & W is liable to the Department for use taxes as the licensee of real property pursuant to section 212.031, Florida Statutes (1995).[1] We affirm.
S & W owns coin-operated machines, referred to here as "air-vac" machines, or units, which allow people to vacuum their cars and add air to their tires. S & W placed the machines, which are attached to concrete pads, on the properties of convenience and gas stores pursuant to agreements between itself and the stores' owners. Monthly compensation to the owners is a percentage of the gross receipts generated by the unit. The percentage varied from store to store, generally in relation to the amount of revenue collected. Only S & W had the key to a unit's money vault. Under the agreements, S & W was solely responsible for collecting the monies monthly and tendering the appropriate amounts to the store owners. The hearing officer found that S & W was solely responsible for inspecting and maintaining the units at no cost to the store owners and that S & W was ultimately responsible for refunding money to store owners should a *1315 machine fail to properly operate. S & W employees were authorized to enter the properties at any time to collect monies or perform maintenance and repairs. S & W carried liability insurance on the units and was solely responsible for all licensing fees and taxes on the machines. Store owners were not responsible for the costs of placing the machines, maintaining or cleaning them, repairing them, or insuring them. The air-vac machines themselves were portable, and, although the concrete slabs weighed 600 pounds, the store owner was permitted to move them. The owners usually did provide and pay for the electricity needed to operate the machines. At its discretion, S & W could decide to remove a machine if it failed to generate sufficient profits.
S & W characterized this scheme as a "revenue sharing arrangement." The hearing officer found that payment was based upon the right of placement of the machine on the property of another distinct business entity and that a store owner was not entitled to receive any compensation once a unit was removed from the owner's premises, and thus concluded that S & W had been granted licenses for the use of real property. Therefore, pursuant to section 212.031, Florida Statutes, use taxes were owed to the Department.
S & W first urges that the arrangement with the convenience stores was a "bailment." Although the term "bailment" is difficult to define concisely, it is generally a contractual relationship among parties in which the subject matter of the relationship is delivered temporarily to and accepted by one other than the owner. See 5 Fla. Jur.2d Bailments § 1 (1978). The subject of S & W's claimed bailment was the air-vac unit.
Among the chief features of bailments is the degree to which possession, custody and control of the subject matter is surrendered by the bailor to the bailee. It is stated in Corpus Juris Secundum:

Generally, such a full delivery of the subject matter must be made to the bailee as will entitle him to exclude for the time of the bailment the possession of the owner and all other persons, give the bailee an independent and temporarily exclusive possession of the property, or sole custody and control, result in an actual change of legal as well as physical possession of the property from the bailor to the bailee, make him liable to the owner as the sole custodian of the property in the event of his neglect or fault in discharging his trust with respect to the subject matter, and require a redelivery of it by him to the owner or other person entitled to receive it after the trusts of the bailment have been discharged.
8 C.J.S. Bailments § 23b (1988) (emphasis added) (footnote omitted). See also Monroe Systems for Business, Inc. v. Intertrans Corp., 650 So.2d 72, 76 (Fla. 3d DCA 1994) (quoting Am.Jur.2d Bailments § 28), review denied, 659 So.2d 1087 (Fla.1995); 8 Am. Jur.2d Bailments § 68 (1980) ("[I]t is the general rule that there must be such a full transfer, actual or constructive, to the bailee as to exclude the possession of the owner and all other persons and give to the bailee, for the time being, sole custody and control thereof."). The facts detailed above show that the air-vac machines were not the subject of a bailment.
S & W next argues that its arrangements with the store owners constituted joint ventures. The revenues of joint ventures are not taxable under section 212.031. Conklin Shows, Inc. v. Department of Revenue, 684 So.2d 328, 332 (Fla. 4th DCA 1996). To establish a joint venture, the following elements must be established in addition to those required to form a basic contract: (1) a community of interest in the performance of the common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits and (5) a duty to share in any losses which may be sustained. Id.; see also Kislak v. Kreedian, 95 So.2d 510, 515 (Fla.1957).
Although the common business purpose element appears to have been satisfied by the arrangement under review, the remaining elements are not. The evidence demonstrated that S & W maintained exclusive control over the units in all ways except that a store owner could direct where the *1316 unit would be located. Nor was the joint proprietary interest element satisfied simply because S & W owned the machines and the store owners owned the land.
S & W argues that both it and the store owners had the right to share in the profits of the alleged venture. All that was proven, however, was that the store owners received a fixed percentage of the revenues from the units on their property. As to shared losses, S & W contends that this requirement was met because the potential existed that a machine would not be profitable at a particular store and would be removed by S & W, leaving the store owner in a disadvantageous position relative to its competitors, who might offer the services of such machines. This fails to meet the loss requirement. To share in losses means that each party is responsible or liable for the losses created by the venture and is exposed to liability, if any, to creditors or third parties. Phillips v. United States Fidelity & Guaranty Co., 155 So.2d 415, 419 (Fla. 2d DCA 1963).
Citing other jurisdictions for authority, S & W also argues that the "shared losses" element is unnecessary when the nature of the undertaking is such that no losses other than time and labor in carrying out the undertaking are likely to occur. Even if this were so, an issue which does not appear to have been decided in Florida, S & W's business was certainly capable of incurring losses. S & W purchased and owned each of the machines, and there was testimony that it takes two and one-half to three and one-half years to recoup the investment on a particular machine. There was also testimony that the machines broke down and were vandalized, that S & W had a toll-free repair line, and that repairs were completely paid for by S & W. When car owners lost money in the machines, it was S & W which ultimately reimbursed them. Contrary to S & W's argument, this is not the sort of situation where "no losses other than time and labor" were likely.
S & W also challenges the conclusion that their arrangement with convenience stores can be a license. License has been defined by the legislature as follows:
"License," as used in this chapter with reference to the use of real property, means the granting of a privilege to use or occupy a building or a parcel of real property for any purpose.
§ 212.02(10)(i), Fla. Stat. This is a broad definition that embraces the arrangements between S & W and the store owners for the placement of the air-vac units.[2]
S & W finally questions whether convenience stores and gas stations meet the "business" requirement of section 212.031's use tax. The statute provides:
It is declared to be the legislative intent that every person is exercising a taxable privilege who engages in the business of renting, leasing, letting, or granting a license for the use of any real property....
§ 212.031(1)(a) (emphasis added). S & W argues that the business of the convenience or gas store owners was to sell food or gas, not to grant licenses for the use of real property; therefore, the transactions between them and itself were not taxable under this statute. The hearing officer and the Department found to the contrary. The term "business" is also defined in section 212.02:
"Business" means any activity engaged in by any person, or caused to be engaged in by him, with the object of private or public gain, benefit, or advantage, either direct or indirect.
§ 212.02(2), Fla. Stat. Section 212.031 does not concern itself with the primary business of the land owner. As was explained by the first district in Regal Kitchens, Inc. v. Florida Department of Revenue, 641 So.2d 158 (Fla. 1st DCA 1994), in the context of renting real property:
Nothing in subsection 212.02(2), Florida Statutes (1989), suggests that the term "business" is limited to those who engage in regular course of dealing with different *1317 clients or customers. A person who rents a single duplex unit is engaged in business as is the owner of an apartment who rents thousands of units.
Id. at 163. Here, the licensors operated a commercial premises designed to attract customers for revenue-generating purposes. Such ventures do not limit themselves to the sales of goods but also derive income from a range of activities that take place on their premises. These typically include advertising, amusement machines, lottery and other facilities. To determine that store owners were in the business of granting a license was not a clearly erroneous interpretation of subsection 212.02(2) and of section 212.031.[3]
AFFIRMED.
W. SHARP and ANTOON, JJ., concur.
NOTES
[1] In pertinent part, that section states:

(1)(a) It is declared to be the legislative intent that every person is exercising a taxable privilege who engages in the business of renting, leasing, letting, or granting a license for the use of any real property....
(c) For the exercise of such privilege, a tax is levied in an amount equal to 6 percent of and on the total rent or license fee charged for such real property by the person charging or collecting the rental or license fee.
§ 212.031, Fla. Stat. In the case of a license, the obligation to pay the statutory tax ultimately falls on the licensee. See § 212.031(2)(a); Schnurmacher Holding, Inc. v. Noriega, 542 So.2d 1327, 1329 (Fla.1989).
[2] The Department points out that case law from outside Florida is consistent with its conclusion that the arrangements at issue in this case were licenses to use real property. See Ulan v. Vend-A-Coin, Inc., 27 Ariz.App. 713, 558 P.2d 741 (1976).
[3] We do not find S & W's final point concerning penalties appropriate for our consideration since it was not properly raised below.